J-S35008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAKIM HOPKINS, | |
| Appellant | No. 1508 MDA 2017 |

Appeal from the Judgment of Sentence August 29, 2017
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000948-2012

BEFORE: BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 27, 2018**

Appellant, Hakim Hopkins, appeals from the judgment of sentence of 18-60 months' incarceration for possession with intent to deliver cocaine. Appellant challenges the trial court's order denying suppression of the seized contraband. After careful review, we affirm.

The trial court summarized the facts of this matter as follows:

> On April 9, 2012, Sergeant Chris Kriner (Kriner) of the Old Lycoming Township Police Department was dispatched to the Days Inn in South Williamsport to assist Officer Keeler of the South Williamsport Police with a welfare check. N.T. [Suppression], [12/11/12], [at] 16. Upon arriving at the scene, Keeler informed Kriner that a father had called the Lycoming County Call Center and was concerned about his daughter, Dashika Wilson (Wilson). *Id.* The father stated that Wilson was at the Days Inn with her boyfriend and that he would not let her leave. *Id.* [at] 16-17. As Kriner and Keeler were walking into the hotel they saw a male and a female exiting. *Id.* at 17. Kriner asked the female if she was Dashika Wilson and she stated that she was. *Id.* Keeler began

speaking with Wilson while Kriner followed the male out of the hotel, who was later identified as [Appellant]. *Id.*

Kriner spoke with [Appellant] and ascertained that Wilson was driving a gold Chrysler Pacifica. *Id.* Kriner ran the registration plate of the vehicle and it came back as registered to Wilson and her father, Rodney Wilson. *Id.* While running the registration, Kriner observed police evidence tape on the vehicle and remembered that a vehicle of the same description was involved in an assault in Williamsport a few days earlier. *Id.* at 18. In addition, while noticing a flat screen TV in the back of the vehicle, Kriner remembered that there was a home invasion robbery several days before the assault. *Id.* In the home invasion, a flat screen TV had been stolen. *Id.* Further, one of the suspects in the home invasion had a teardrop tattoo under his eye, which [Appellant] also had. *Id.*

Kriner questioned [Appellant] about the TV and he appeared suspicious. *Id.* at 19. As a result, Kriner asked Wilson if she would permit him to search the vehicle so that he could look at the TV and search for drugs and guns. *Id.* Wilson stated that he could search the vehicle, however, Kriner requested that she speak with her father first. *Id.* Wilson and her father spoke away from Kriner and eventually both consented to a search of the vehicle. *Id.* Kriner testified that he read the consent to search form, explained it in detail, and that they both signed the form. *Id.* The consent to search form stated that Kriner was searching in regards to a theft and drug investigation. *Id.* Kriner believed that the vehicle contained drugs based on the evidence tape, the TV from the home invasion was probably drug related, and that [Appellant] told him that he had been arrested for drug offenses in the past. *Id.* at 20.

After signing the consent to search form, Kriner searched the vehicle. *Id.* The TV make and model matched the TV that was stolen and Williamsport Bureau of Police arrived and seized it as evidence. *Id.* at 21. Kriner then searched a gym bag and observed a 40 caliber round of ammunition and a box of sandwich bags. *Id.* Finally, Kriner searched a shoe box and found a pair of men's 10 1/2 sneakers, two (2) firearms, two (2) revolvers, and a bag of suspected crack cocaine. *Id.* at 22.

Kriner asked [Appellant] if the gym bag was his after it was searched and he stated that it did belong to him. *Id.* at 27. *Id.* Kriner did not ask about the shoe box prior to opening it. *Id.*

at 28. When the shoe box was opened he saw the men's sneakers and then assumed they belonged to [Appellant]. *Id.* at 35. Kriner saw the shoes and guns when he opened the box. *Id.* at 36. After moving the shoes, Kriner observed the drugs. *Id.*

Trial Court Opinion (TCO), 5/2/13, at 1-3.

The Commonwealth charged Appellant with theft, gun, and drug offenses.[1] Appellant filed a timely motion to suppress the seized contraband, and the trial court conducted a hearing on the matter on December 11, 2012. On May 2, 2013, the trial court issued an opinion and order denying Appellant's motion. On March 10, 2017, following a tortured procedural history that is not relevant to this appeal, a jury convicted Appellant of possession with intent to deliver cocaine, possession of cocaine, and possession of drug paraphernalia. On August 29, 2017, the trial court sentence Appellant as stated above.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. On January 11, 2018, the trial court issued a statement pursuant to Rule 1925(a) indicating that, in response to Appellant's Rule 1925(b) statement, it would rely on the reasoning set forth in its May 2, 2013 opinion. Appellant now presents the following question for our review:

Whether the trial court erred in denying Appellant's motion to suppress evidence [in] finding that he did not have a reasonable expectation of privacy in a gym bag and a closed shoebox found

---

[1] Specifically, the Commonwealth charged Appellant with persons not to possess (a firearm), 18 Pa.C.S. § 6105; two counts of firearms not to be carried without a license, 18 Pa.C.S. § 6106; possession with intent to deliver cocaine, 35 Pa.C.S. 780-113(a)(30); receiving stolen property, 18 Pa.C.S. § 3925; possession of a controlled substance, 35 Pa.C.S. 780-113(a)(16); and possession of drug paraphernalia, 35 Pa.C.S. 780-113(a)(32).

in a vehicle in which he had left those items with the permission of the owner?

Appellant's Brief at 6.

After a thorough review of the record, Appellant's brief, the applicable law, and the comprehensive and well-reasoned opinion of the trial court, we conclude that there is no merit to Appellant's claims on appeal, and do so based on the reasons set forth in that opinion. **See** TCO at 3-7 (ruling that Appellant lacked a reasonable expectation of privacy in the location of the seized contraband); **and see** TCO at 7 (alternatively concluding that the search of Appellant's gym bag and shoe box fell within the scope of the consent to search given by Wilson and her father).

Judgement of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2018